The Full Commission has reviewed this matter based on the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and oral arguments on appeal. No additional witness testimony was received by the Full Commission. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-Trial Agreement and at the hearing on 21 February 1996 as:
STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on or about 4 August 1989. He had an average weekly wage of $542.40. Plaintiff was paid compensation for temporary total disability from 18 August 1989 through 13 February 1995.
******************
The Full Commission, having considered all the evidence of record including the Deputy Commissioner's first hand observations of the witnesses, nonetheless rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a male born on 20 August 1937. He completed the sixth grade and can read and write. Plaintiff's work experience includes farming, trimming trees, food service, a laborer and lineman for an electric company, and running pipes for a construction company.
2. Plaintiff began working for defendant on 21 December 1967. On 4 August 1989, plaintiff was lifting a box of plugs when he felt an onset of pain in his back. Plaintiff's accident was accepted as compensable by defendant.
3. The incident of 4 August 1989 constituted an injury by accident arising out of and in the course of plaintiff's employment with defendant.
4. As the result of his 4 August 1989 injury by accident, plaintiff sustained an injury to his back. After studies showed a possible herniated disc at L4-5, a microlumbar diskectomy at L4-5 was done on 16 August 1989 by Dr. Steven Stranges.
5. Due to plaintiff's continued complaints of pain, a second surgery to rule out a recurrent herniated disk was performed by Dr. Stranges on 7 September 1989. No herniation was found.
6. Following the surgery on 7 September 1989, plaintiff continued to experience pain in his lower back and right leg. In December, 1989 and January, 1990, plaintiff underwent physical therapy at Thoms Rehabilitation Hospital. Around this same time, plaintiff also began a series of epidural blocks. After his discharge from Thoms, around 16 February 1990, plaintiff reported some improvement.
7. Despite some level of improvement, plaintiff continued to complain of pain and continued under the treatment of Dr. Stranges, who diagnosed plaintiff with post-laminectomy syndrome.
8. Plaintiff was also evaluated by Dr. Todd Chapman of Miller Orthopaedic Clinic, whose first examination was on 18 February 1991. On 3 October 1991, Dr. Chapman performed a re-exploration with decompression and partial diskectomy at L4-5, with a left iliac crest bone graft at that level.
9. Following this surgery, plaintiff experienced improvement in his leg pain. However, plaintiff continued to experience back pain. On 15 May 1992, a fourth surgery to insert instrumentation was performed by Dr. Chapman.
10. Following this last surgery, Dr. Chapman continued to see plaintiff on occasion in 1992 and 1993. Dr. Chapman released plaintiff to return as needed.
11. Dr. Chapman saw plaintiff again in April, 1995. Dr. Chapman was of the opinion that plaintiff had a thirty percent permanent impairment of his spine. In that condition, Dr. Chapman was of the opinion that plaintiff could not return to his prior job with defendant or to similar jobs involving manual labor. Dr. Chapman believed that due to his condition, plaintiff could experience a difficulty standing for prolonged periods of time.
12. Beginning on 1 September 1992 and continuing through the date of his deposition in June, 1996, plaintiff has also been treated by Dr. Joshua Miller of the Southeastern Pain Clinic. As is typical with the type of failed back syndrome plaintiff experienced, his complaints of pain have fluctuated since the time of his injury. Although medication, such as that prescribed by Dr. Miller, has brought temporary relief to plaintiff, his overall permanent condition has not improved since the time of his rating by Dr. Chapman.
13. Dr. Walter J. Lawless, a clinical psychologist, evaluated plaintiff in September, 1992. Dr. Lawless concluded that plaintiff suffers from depression and anxiety. By the time of plaintiff's last examination on 5 March 1993, Dr. Lawless noted that plaintiff was at a level of functioning such that he could be released from the doctor's care.
14. In February 1994, plaintiff applied for a motor vehicle dealership license so that he could invest in his brother's car business. This business venture operated from February through the end of May, 1994.
15. At the end of May, 1994, plaintiff signed over his interest in the business to his wife, Judith Deese, who then opened a used vehicle dealership under the name of J J Auto Sales. J J Auto Sales continued to do business until late 1994 or early 1995.
16. Mr. William Gregory, a private investigator hired by defendant, obtained videotape of plaintiff on the premises of his brother's car lot in the fall of 1994. Prior investigations by Mr. Gregory produced no evidence that plaintiff was engaging in any activity that went beyond his recommended physical limitations. Further, there is no evidence in the record that plaintiff was earning wages at his former wage level with defendant from this car business or from any other employment.
17. The Deputy Commissioner in this matter found plaintiff's testimony regarding his association with his brother's car business and his later investment in said business was not credible. The Deputy Commissioner found that plaintiff had attempted to keep his involvement with the car business hidden from defendant and that plaintiff had never mentioned his involvement to any of his treating physicians until after he learned that his activities had been videotaped.
18. Despite the Deputy Commissioner's first hand observations of the witness at hearing, the Full Commission finds that plaintiff's testimony regarding his association with his brother's car business and his later investment in said business to be credible for the following reasons: plaintiff informed Dr. Lawless that he had been spending some time with his brother at his brother's car dealership; plaintiff's statements to Dr. Lawless are corroborated by statements to Dr. Lawless by plaintiff's wife; Ms. Donna Kropelnicki, the rehabilitation nurse assigned by defendant to plaintiff's case, had knowledge of the fact that plaintiff was attempting to get out of the house and that he had been frequently visiting his brother's business, and; it was only after Ms. Kropelnicki reported these activities to defendant that the later videotapes were taken.
19. Based upon the credible evidence of record, the Full Commission finds that the Administrative Decision and Order of Special Deputy Commissioner W. Bain Jones, Jr., filed 13 February 1995 which allowed the termination of plaintiff's benefits effective 15 February 1994, was erroneously approved.
20. An Industrial Commission Form 21 Agreement for Compensation was entered into by the parties and approved by the Industrial Commission on 16 January 1990.
21. As the result of his 4 August 1989 injury by accident, plaintiff has been unable to earn wages in his former employment with defendant or in any other employment from 15 February 1994 through the present and continuing.
******************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 4 August 1989, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant which resulted in injury to his back. G.S. § 97-2(6).
2. Defendant's payment to plaintiff of total disability benefits pursuant to and approved Form 21 raises a rebuttable presumption of continuing disability. G.S. § 97-29; Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72 (1996). Defendant has failed to produce sufficient evidence to rebut this presumption. Id.
3. Based on the foregoing findings of fact, the Full Commission concludes as a matter of law that the Administrative Decision and Order of Special Deputy Commissioner W. Bain Jones, Jr., filed 13 February 1995 which allowed the termination of plaintiff's benefits effective 15 February 1994, was erroneously approved. G.S. § 97-18.1.
4. As the result of his 4 August 1989 injury by accident, plaintiff is entitled to have defendant reinstate payments of temporary total disability compensation at the rate of $361.62 for the period of 15 February 1994 through the present and continuing until such time as plaintiff returns to work at his former wage level or until further order from the Industrial Commission. G.S. § 97-29.
5. As a result of his injury by accident, plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred. G.S. § 97-25.
******************
Based upon the foregoing, findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate $361.62 of for the period of 15 February 1994 through the present and continuing until such time as plaintiff returns to work at his former wage level or until further order of the Industrial Commission. The amount of compensation which has accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee hereinafter awarded.
2. Defendant shall pay for all reasonable medical expenses incurred or to be incurred by plaintiff as the result of plaintiff's 4 August 1994 injury by accident.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the amount of accrued compensation, this fee shall be deducted from the amount owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
4. Defendant shall pay the costs due this Commission.
 S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER